******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

STATE OF CONNECTICUT *v.* JEAN BARJON
(AC 40477)

Keller, Moll and Beach, Js.

*Syllabus*

Convicted of the crimes of robbery in the first degree, conspiracy to commit robbery in the first degree, robbery in the second degree and conspiracy to commit robbery in the second degree, the defendant appealed to this court. The defendant's conviction stemmed from an incident in which he and three conspirators, including T, robbed the victim, the owner of a grocery store. During the pretrial criminal proceedings against the defendant, S represented both the defendant and T, who was tried in a separate proceeding. The state and the defendant, who entered a plea of not guilty, were not able to agree upon a disposition, and the case was placed on the trial list. Subsequently, S appeared in court with the defendant, who had communicated his intention to plead guilty under the *Alford* doctrine to the charge of conspiracy to commit robbery in the first degree. During the defendant's plea canvass, the trial court questioned the defendant as to his reasons for pleading guilty, and subsequently declined to accept the defendant's plea. The court then addressed S about a potential issue regarding his continuing to represent both the defendant and T, granted S's motion to withdraw as counsel for the defendant, and continued the defendant's case to enable him to obtain new counsel. The defendant's case proceeded to trial, and the jury found him guilty on all counts. On appeal, the defendant claimed that the trial court violated his right to conflict free representation by not inquiring into a potential conflict prior to the defendant's plea canvass hearing. Specifically, he claimed, inter alia, that once the pretrial discussion concerning his acceptance of a plea broke down and the case was placed on the trial list, the court should have known of the conflict of interest and inquired about it on the record. *Held* that the defendant could not prevail on his claim that the trial court violated his constitutional right to conflict free representation by not timely inquiring about possible conflicts: there was no indication in the record that an actual conflict existed at any point during the pretrial proceedings, as there was no indication that plea negotiations had broken down when the case was placed on the trial list, especially given that the defendant attempted to plead guilty, the court had no affirmative duty to inquire into the possibility of a conflict because no indication of a conflict, other than the mere fact of joint representation, existed, and, contrary to the defendant's claim, the court did not err in assuming that potential conflict issues had been resolved, as the record did not show that the court was specifically apprised of a potential conflict, other than joint representation itself, until S raised the issue at the defendant's plea canvass; moreover, the defendant's claim that the fact that he was prepared to make a statement to his detriment and to the benefit of T indicated a conflict requiring reversal was unavailing, as any possibility of an actual conflict was averted when the trial court made proper inquiry at the time that the defendant pleaded guilty, declined to accept the defendant's guilty plea, and allowed S to withdraw as counsel, and the defendant's claim that, when S withdrew from representation, subsequent counsel did not have adequate time to interview witnesses and to conduct his own investigation of the case was not properly before this court, as this court's review was limited to allegations that the defendant's constitutional rights had been jeopardized by the actions of the trial court, rather than those of counsel, and there was no ruling of the trial court regarding the performance of subsequent counsel in the record.

Argued September 11—officially released December 4, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of robbery in the first degree, conspiracy to

commit robbery in the first degree, robbery in the second degree and conspiracy to commit robbery in the second degree, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury before *Thim, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Stephen A. Lebedevitch*, assigned counsel, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Jean Barjon, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2), robbery in the second degree in violation of General Statutes (Rev. to 2011) § 53a-135 (a) (1), and conspiracy to commit robbery in the second degree in violation of § 53a-48 and General Statutes (Rev. to 2011) § 53a-135 (a) (1).[1] On appeal, the defendant claims that the trial court violated his right to conflict free counsel under the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. We affirm the judgment of the trial court.

The defendant and his codefendant, Jacques Louis, were tried together. In *State* v. *Louis*, 163 Conn. App. 55, 58–60,134 A.3d 648, cert. denied, 320 Conn. 929, 133 A.3d 461 (2016), this court held that a jury reasonably could have found the following facts: "On December 28, 2011, at approximately 8:15 p.m., [Louis], [the defendant], Tinesse Tilus, and Guailletemps Jean-Philippe (conspirators) together entered the Caribbean-American Market (market) on Wood Avenue in Bridgeport. They called for the owner, Rene Adolph, who was in the kitchen cooking, to come out. Adolph recognized Tilus and [the defendant], but not [Louis] and Jean-Philippe, who stood on either side of him. The conspirators demanded money from Adolph, and Jean-Philippe displayed a firearm. Adolph, fearing for his life, ran from the market to the laundry next door and called out for help. [Louis], [the defendant], and Tilus chased Adolph, who held the door to the laundry closed as [Louis] attempted to open it. Margarita Avcolt, a laundry employee, observed the activity, and telephoned the police. She saw one man trying to open the door and two others standing a 'meter' away.

"Meanwhile, Jean-Philippe, who had remained in the market, walked into the walled-in area occupied by the cashier, Ramon Tavares. Jean-Philippe displayed his gun and ordered Tavares to give him money. Jean-Philippe took the money Tavares gave him, as well as his phone.

"Back at the laundry, Adolph saw a police cruiser passing by, so he ran out and flagged down Officer Elizabeth Santoro. The three conspirators, who had followed Adolph to the laundry, ran and got into a car. Adolph pointed to the three conspirators in the car, who were getting ready to 'take off.' Adolph told Santoro that the men had tried to rob him. He also pointed to Jean-Philippe, who by that time was running away from the market on Wood Avenue. Adolph saw him 'toss the gun.' Santoro was able to detain Jean-Philippe, and told

[the defendant], the driver of the car, not to move. Tilus and [Louis] were passengers in the car. According to Santoro, all of the conspirators were dressed in suits as if they were going somewhere.

"Officer Christopher Martin arrived on the scene as backup for Santoro. Martin seized $635 from Jean-Philippe and found a loaded, operable firearm that Jean-Philippe had discarded near a trash receptacle. A firearms expert, Marshall Robinson, examined the gun that Martin recovered and the casings it ejected when fired. As part of his investigation, Robinson learned that the gun had been used to fire cartridges in an incident in New Jersey. Both [Louis] and Jean-Philippe were from New Jersey.

"[Louis] and [the defendant] were each charged with robbery in the first degree, conspiracy to commit robbery in the first degree, robbery in the second degree, and conspiracy to commit robbery in the second degree, and stood trial together. [Louis'] theory of defense was that he was 'merely present' at the time of the robbery and that Adolph's testimony was not believable. [The defendant] also claimed that he merely was present at the time of the robbery, that Adolph was not credible, and that Jean-Philippe acted alone in order to collect an unpaid debt from Adolph, who allegedly ran an illegal lottery from the market.''

From the outset of the criminal proceedings against the defendant, Attorney Eroll Skyers represented both the defendant and Tilus, who had criminal charges arising from the same events pending against him but was tried in a separate proceeding. On February 7, 2012, the defendant entered a plea of not guilty to the charges. Over the course of the following months, the state and the defendant were not able to agree upon a disposition, and the case was placed on the trial list. On October 2, 2012, Attorney Skyers appeared in court with the defendant, who at that time had communicated through counsel his intention to plead guilty under the *Alford*[2] doctrine to the charge of conspiracy to commit robbery in the first degree. The following colloquy occurred between the trial court, *Devlin, J.*, and the defendant during the plea canvass:

"The Court: Do you believe, Mr. Barjon, that even though you disagree with [the prosecutor's statement of facts], even though you don't agree that it happened the way the prosecutor said, do you think [that] if you went to trial and . . . they put forward their evidence in court, there's at least a risk that the jury might believe their side of the case and convict you on this charge and the other charge pending against you. Do you think there's a chance of that?

"[The Defendant]: No, not so ever. No.

"The Court: All right. So, why are you pleading guilty?

"[The Defendant]: I'm risking . . . losing my job, tak-

ing time—I already have a job, I have a good job of making sixty something thousand dollars every year.

"The Court: Right.

"[The Defendant]: So, taking [time] off every day to come to court, to trial every day. And then I take the plea to help my friend that I put in trouble for not doing anything—

"The Court: Right, but you know—

"[The Defendant]: —Tinesse

"The Court: But—

"[The Defendant]: So, I do it in my heart.

"The Court: Yes, but here's the thing, Mr. Barjon, the plea bargain here calls for a potential sentence of up to four years in jail. You know that, right?

"[The Defendant]: Well . . . my lawyer said . . . they're . . . right to argue.

"The Court: Right. But there's no guarantee you're going to get less than that, there's none whatsoever. So, you should not be pleading guilty thinking you're going to go back to work on the day of your sentencing. You should not do that. If you're . . . taking this plea to keep your job or taking this plea to—and really, honestly, Mr. Barjon, while I commend your . . . concern about your friend, this is your decision to make, and you need to make it based on your own interests. Okay. . . .

"The Court: . . . So, I can't take your plea, Mr. Barjon, if you're not going to acknowledge there's at least a risk that you could be convicted."

After the court declined to accept the defendant's plea, it addressed Attorney Skyers about a potential problem regarding his continuing to represent both the defendant and Tilus:

"The Court: . . . Okay. So, what's the situation? So, I've called in Mr. Barjon and Mr. Tilus for trial. From the very first moment they came to our court, they were jointly represented by—by yourself, Attorney Skyers. And now it looks like, as we had before, [we're] unable to resolve the case on any kind of a plea negotiation. We have a judge available. And these cases are going to start trial. But . . . my understanding is that you believe there's some problem . . . at this point . . . [with] your representation of both defendants?

"Attorney Skyers: I— I—

"The Court: Well, I don't know, maybe these further discussions [have] clarified that. I'm not sure. But if there is, this is the time to put [it] on the record, so we can address it directly.

"Attorney Skyers: At the time—that's correct. At the time that Mr. Barjon and Mr. Tilus came to my office,

I indicated to both of them that potentially there could be a conflict for my representation of both. Do you agree with that, Mr. Barjon?

"[The Defendant]: Yes, I did.

"Attorney Skyers: And they persisted in their desire to have me represent them. And so, what I represented was that in the event that there could not be a disposition without trial, that at that point the conflict would have come to a real crux, and that I was suggesting to Mr. Barjon that he would have to have his own counsel representing him and he understood that. Is that not so?

"[The Defendant]: Yes.

"Attorney Skyers: And so, that coming here this morning prior to court opening up the session, I indicated that likely that's where we were today, and that Mr. Barjon would probably have to get his own counsel unless we were able to dispose of this by plea.

"The Court: See, that's very unfair to the court because the court goes through a process where we talk about these cases, we work out the discovery, we make a proposal to settle the cases. Sometimes that works, sometimes it doesn't. But then the case moves to being [on] a trial list. And I assume that all [of] these issues about potential conflicts are . . . resolved. I mean . . . to me this is highly inappropriate."

The court subsequently granted Attorney Skyers' motion to withdraw as counsel for the defendant and continued the defendant's case to enable the defendant to obtain new counsel. The defendant's case proceeded to trial in January, 2013, and the jury found the defendant guilty on all counts. The court subsequently sentenced the defendant to a total effective sentence of ten years of incarceration, execution suspended after five years, followed by five years of probation. This appeal followed.

On appeal, the defendant argues that the trial court violated his right to conflict free representation by not inquiring into a potential conflict prior to the colloquy on October 2, 2012. We disagree.

We begin our analysis of the defendant's claim by setting forth the applicable law and standard of review. The defendant's claim that the court violated his right to conflict free representation by not timely inquiring about possible conflicts presents a question of law and, therefore, our review is plenary. See *State* v. *Parrott*, 262 Conn. 276, 285–86, 811 A.2d 705 (2003).

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to effective assistance of counsel. . . . Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representa-

tion that is free from conflicts of interest." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 685, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). "This right applies not only to the trial itself, but to any critical stage of a criminal proceeding." *State* v. *Gaines*, 257 Conn. 695, 706–707, 778 A.2d 919 (2001).

"Cases involving conflicts of interest usually arise in the context of representation of multiple codefendants by one attorney where the attorney adduces evidence or advances arguments on behalf of one defendant that are damaging to the interests of the other defendant." (Internal quotation marks omitted.) *State* v. *Tilus*, 157 Conn. App. 453, 466, 117 A.3d 920 (2015), appeal dismissed, 323 Conn. 784, 151 A.3d 382 (2016). Nevertheless, "permitting a single attorney to represent codefendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel. This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation." *Holloway* v. *Arkansas*, 435 U.S. 475, 482, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978); see also *State* v. *Navarro*, 172 Conn. App. 472, 481, 160 A.3d 1116, cert. denied, 326 Conn. 910, 164 A.3d 681 (2017). "An attorney has an *actual*, as opposed to a *potential*, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action. . . . An attorney has a potential conflict of interest if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." (Citations omitted; emphasis added; internal quotation marks omitted.) *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003); see also *State* v. *Tilus*, supra, 466.

"The trial court has a duty to explore the possibility of a conflict when it is alerted to the fact that the defendant's constitutional right to conflict free counsel is in jeopardy." *State* v. *Tilus*, supra, 157 Conn. App. 466. "The purpose of the court's inquiry . . . is to determine whether there is an actual or potential conflict, and, *if there is an actual conflict*, to inquire whether the defendant chooses to waive the conflict or whether the attorney must withdraw." (Emphasis added.) *State* v. *Figueroa*, 143 Conn. App. 216, 226, 67 A.3d 308 (2013). "This obligation arises not only when there has been a timely conflict objection at trial, but also when the trial court knows or reasonably should know that a *particular* conflict exists." (Emphasis added; internal quotation marks omitted.) Id., 224. The trial court is not required "to inquire into the existence of a vague, unspecified possibility of conflict, such as that which inheres in almost every instance of [joint] representa-

tion." (Internal quotation marks omitted.) *State* v. *Navarro,* supra, 172 Conn. App. 484.

In the present case, the record does not show that any *actual* conflict existed prior to the colloquy on October 2, 2012. The defendant claims that "[o]nce the pretrial discussion of a plea being accepted by the defendant broke down, the case being placed on the trial list, and the continued representation of both the defendant and . . . Tilus by Attorney Skyers, the court should have known of the conflict of interest and inquired on the record of both parties."

There is no indication in the record that an actual conflict existed at any point during the pretrial proceedings. There is no record that plea negotiations "broke down" when the case was placed on the trial list, as the defendant claims; indeed, the defendant attempted to plead guilty on October 2, 2012. The understanding between Attorney Skyers and the defendant, according to representations on the record on October 2, 2012, was that if the case could not be resolved by a plea bargain, Attorney Skyers would withdraw. The fact that Attorney Skyers did not withdraw prior to that time suggests that plea discussions were continuing and had not, in fact, broken down. The defendant's assertion to the contrary is not supported by the record.[3]

"In the absence of an affirmative duty by the trial court to inquire . . . a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance in order to obtain reversal of his conviction." (Internal quotation marks omitted.) *State* v. *Crespo,* supra, 246 Conn. 686, citing *Cuyler* v. *Sullivan,* 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); see also *Festo* v. *Luckart,* 191 Conn. 622, 626–31, 469 A.2d 1181 (1983). As previously noted, on the record of this case, the court had no affirmative duty to inquire into the possibility of a conflict because no indication of a conflict, other than the mere fact of joint representation, existed. See *State* v. *Navarro,* supra, 172 Conn. App. 483–84. The defendant did not press the issue of a conflict at trial, and he also has failed to show that an actual conflict of interest existed. Pursuant to *Crespo,* therefore, there was no violation of his right to conflict-free representation.

Additionally, the defendant claims that the court erred in assuming that potential conflict issues had been resolved. This argument is without merit. "It is firmly established that a trial court is entitled to rely on the silence of the defendant and his attorney, even in the absence of inquiry, when evaluating whether a potential conflict of interest exists. . . . [D]efense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume

either that [the potentially conflicted] representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Gaines*, supra, 257 Conn. 708. There is no indication that an actual conflict existed, and the record does not show that the court was specifically apprised of a potential conflict, other than joint representation itself, until Attorney Skyers raised the issue at the defendant's plea canvass. At that point, Attorney Skyers was permitted to withdraw, and the defendant was given an opportunity to obtain alternate counsel.

The defendant also claims that the fact that he was prepared to make a statement to his detriment and to the benefit of Tilus indicates a conflict requiring reversal. This claim, however, is also without merit. The defendant apparently was under the impression that if he pleaded guilty, he would be able to return to work, but the court informed him that his expectations may not be realized; the court did not accept the defendant's plea.[4] After declining to accept the defendant's plea, the court was apprised of the potential conflict and, as previously discussed, allowed Attorney Skyers to withdraw and continued the case. The court made proper inquiry, and any possibility of an actual conflict was averted. See generally *State* v. *Tilus*, supra, 157 Conn. App. 466.

Finally, the defendant contends that when Attorney Skyers withdrew from representation on October 2, 2012, the defendant's subsequent attorney did not have adequate time to interview witnesses and to conduct his own investigation of the case. Any claim regarding the performance of subsequent counsel is not properly before us. "On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the *trial court*, rather than by those of his counsel." (Emphasis in original; internal quotation marks omitted.) *State* v. *Parrott*, supra, 262 Conn. 285. On the record in this case, there is no ruling of the trial court regarding the performance of subsequent counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The jury found the defendant guilty of robbery in the first degree (count one), conspiracy to commit robbery in the first degree (count two), robbery in the second degree (count three), and conspiracy to commit robbery in the second degree (count four). At sentencing, count three was merged with count one, and count four was merged with count two. The issue of whether the merged counts should have been vacated is not before us.

[2] Under *North Carolina* v. *Alford*, 40 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant may plead guilty but not admit guilt, so long as he acknowledges that the state has sufficient evidence to convict, and the plea is otherwise voluntarily and intelligently made. *State* v. *Fairchild*, 155 Conn. App. 196, 199 n.2, 108 A.3d 1162, cert. denied, 316 Conn.

902, 111 A.3d 470 (2015).

[3] The record discloses that no actual conflict existed at any time; when the question of a potential conflict was raised, Attorney Skyers withdrew from representing the defendant.

[4] There is no indication that any of the defendant's statements during the plea canvass were used at trial.

---